THE CITY OF CHICAGO

*v.*

JOHN MILLER SEBEN.

165 371
171 336
165 371
97a 4657
165 371
196 5588
e197 1475

*Filed at Ottawa January 19, 1897—Rehearing denied March 9, 1897.*

1. MOTION—*to exclude evidence for variance must show in what the variance consists.* A defendant moving to exclude plaintiff's evidence for variance between the declaration and the proof must point out in what the variance consists, to enable the court to decide the question intelligently, and to give the plaintiff an opportunity to amend if the point does not involve the merits.

2. LAW AND FACT—*whether negligence proved differs from that charged is a question of fact.* Where there is any evidence tending to support the declaration, the question whether the negligence proved, considering the plaintiff's entire evidence, differs from the allegations in the declaration, is one of fact.

3. MUNICIPAL CORPORATIONS—*difference in liability for exercise of judicial and ministerial powers.* While municipal corporations will

not be held liable in damages for the manner in which they exercise, in good faith, their discretionary powers of a public, legislative or *quasi* judicial nature, yet upon these powers becoming ministerial duties they are liable to actions for damages for their negligent performance.

4. SAME—*distinction between judicial and ministerial powers.* A municipal corporation acts judicially when it selects and adopts a plan for the construction of a public improvement, but in carrying out such plan it acts ministerially, and is bound to see that the work is done in a reasonably safe and skillful manner.

5. SAME—*construction of sewer, after adoption of plan, is a ministerial duty.* The construction and regulation of sewers, built upon the adoption of a general plan, are ministerial duties, and a municipal corporation is responsible in actions for damages caused by its careless or unskillful manner of performing its work.

6. SAME—*sewers must be kept in repair after construction.* While the legal obligation of a municipal corporation organized under the general law to construct gutters and sewers is one which is voluntarily assumed, yet having assumed the obligation and constructed a sewer it must keep the same in repair, and is liable in damages for failure to do so.

7. EXPERT TESTIMONY—*as to proper construction of sewer—when witness is qualified as an expert.* In an action against a city which involves the question of the proper construction of a sewer, it is not error to permit one who had been engaged in sewer building in that city for eighteen years to testify as an expert upon that question.

*City of Chicago* v. *Seben,* 62 Ill. App. 248, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. NATHANIEL C. SEARS, Judge, presiding.

This is an action brought by the appellee against the appellant, to recover damages for a personal injury. The appellant in its brief states the facts as follows: "On the evening of April 8, 1892, while John Miller Seben, a resident of Chicago, and a shoemaker by trade, was walking home after searching for work, he stepped into a sewer inlet at the corner of Polk street and Blue Island avenue, in the city of Chicago, and suffered a double fracture of his left leg, between the knee and the ankle. The night was very dark, there being a thunder storm,

and it was raining. He pulled himself out of the hole, and being discovered by the police, was taken to the Cook county hospital, where he remained for a year. He used crutches for seven months after leaving the hospital, and because of this injury, ever since, he has been unable to follow his trade of shoemaker."

The first count of the amended declaration alleges that the city had control of said street and avenue, and that it was its duty to keep the same in good and safe repair, but that it disregarded its duty and permitted a deep and dangerous hole over and into a certain catch-basin below said street to remain open and uncovered for a long time, to-wit: for three weeks prior to the day of the accident, and to be and remain in an unsafe and dangerous condition, and that by reason of the length of time during which the catch-basin remained open and uncovered, the defendant had due notice, etc.

The defendant filed a plea of not guilty. The case was tried before the court and jury; verdict was rendered in favor of plaintiff; motion for a new trial was overruled, and judgment rendered upon the verdict. Upon an appeal to the Appellate Court, that court affirmed the judgment of the trial court. The present appeal is prosecuted from such judgment of affirmance.

Among the instructions asked by and given for the city, was the following:

"The court instructs the jury, as a matter of law, that the defendant, the city of Chicago, cannot be held liable to the plaintiff for his injury, if it is merely the result of, and caused by a condition of a sewer inlet, which condition was part of a general plan of sewerage adopted by the city, unless you believe the city failed to use reasonable care in determining upon and adopting that plan and that condition, or, unless the plan is such as to be necessarily dangerous; the city, in adopting a system of sewerage for the public benefit, is bound only to exercise reasonable care."

Among the instructions asked by the city and refused by the court, were the following:

1. "First the court instructs the jury, as a matter of law, that the defendant is not liable for any injury to the plaintiff caused by the sewer entrance complained of in this case, where said sewer entrance was constructed in accordance with a plan devised, through no error in judgment and no lack of care and skill, and under the direction of the municipal authorities, and that the jury shall find the defendant not guilty if they believe the sewer inlet in controversy was so constructed.

2. "The court instructs the jury that the defendant is not liable in this case for constructing the sewer complained of, if the sewer was constructed in accordance with a general plan not in itself intrinsically dangerous, under the direction of the municipal authorities; and that the jury are to find the defendant not guilty if they believe the sewer inlet was so constructed."

Roy O. West, Benjamin F. Richolson, and Worth E. Caylor, for appellant:

Municipal corporations are possessed of *quasi* judicial powers as to public improvements, and the courts have no power to interfere unless it is shown that the injury complained of is the result of negligence on the part of the municipal authorities in devising the plan, or making the improvements in accordance with the plan. For errors in judgment there is no liability. *Child* v. *Boston,* 4 Allen, 41; *Johnson* v. *District of Columbia,* 118 U. S. 19; *Dermont* v. *Mayor,* 4 Mich. 435; *Detroit* v. *Beckman,* 34 id. 125; *Lansing* v. *Toolan,* 37 id. 152; *Carr* v. *Northern Liberties,* 35 Pa. St. 324; *Merrifield* v. *Worcester,* 110 Mass. 216; *Mills* v. *Brooklyn,* 32 N. Y. 489; *Urquhart* v. *Ogdensburg,* 91 id. 97; 97 id. 238; *Hardy* v. *Brooklyn,* 7 Abb. N. C. 403; *Watson* v. *Kingston,* 26 Wad. Dig. 95; *Rehrey* v. *Newburg,* 78 Hun, 611; *Roach* v. *Ogdensburg,* 80 id. 467; *Schreiber* v. *New York,* 11 Misc. 551; *Schroth* v. *Prescott,* 63 Wis. 652; *North Vernon* v. *Voegler,*

103 Ind. 314; *McChesney* v. *Hyde Park*, 151 Ill. 634; *Palmer* v. *Danville*, 154 id. 163; *President* v. *Rogers*, 2 Ill. App. 96; *Springer* v. *Walters*, 37 id. 332; *Holman* v. *Chicago*, 41 id. 44; Dillon on Mun. Corp. secs. 1046-1051; Beach on Pub. Corp. secs. 766, 764.

The plan and construction of a public improvement are not to be determined upon by a jury. *Carr* v. *Northern Liberties*, 35 Pa. St. 324; *Mills* v. *Brooklyn*, 32 N. Y. 489.

Negligence in devising the plan by the municipality must be affirmatively shown, and such negligence cannot be inferred from the fact that the plan was defective or worked an injury. *Schreiber* v. *Mayor*, 11 Misc. 551.

The presumption is that the officers of a municipality have done their duty. *Cummins* v. *Seymour*, 79 Ind. 491; *Springer* v. *Walters*, 37 Ill. App. 326; *Palmer* v. *Danville*, 154 Ill. 163.

The corporation is not bound to do everything that human energy or ingenuity can do to prevent injuries. (*Centralia* v. *Krome*, 64 Ill. 19; *Chicago* v. *Gavin*, 1 Ill. App. 302.) Nor to foresee and provide against every possible accident that may occur. *Chicago* v. *Bixby*, 84 Ill. 82.

McCracken & Cross, for appellee:

It is incumbent on the defendant to indicate and point out in what the variance consists, so as to enable the court to pass upon the question intelligently, and also to enable the plaintiff to amend his pleadings. *Harris* v. *Shebek*, 151 Ill. 292; *Railway Co.* v. *Ward*, 135 id. 516.

Whether the negligence proved differs from that alleged in the declaration is a question of fact, where there is any evidence tending to support the declaration. *Harris* v. *Shebek*, 151 Ill. 292.

The failure to keep in repair, being the breach of a ministerial duty, renders the city liable. 2 Dillon on Mun. Corp. (3d ed.) p. 1076, sec. 1049; 2 Shearman & Redfield on Negligence, sec. 287.

Having adopted a plan, and created an existing condition in a street in pursuance thereof, if that condition renders the street unsafe, a city must go further and perform the duty cast upon it, growing out of statute, to exercise ordinary care to make the street, thus encumbered with the product of its plan, reasonably safe for public travel. *Leoner* v. *City,* 77 Mo. 431; *Olliver* v. *City,* 69 id. 79; *Beauden* v. *City,* 71 id. 393; *Russell* v. *Inhabitants,* 74 id. 480; *Chicago* v. *Gallagher,* 44 Ill. 295.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the court:

Two defenses are relied upon by the city. The first is, that there is a variance between the allegations of the declaration and the proof, in that the declaration alleges, that the plaintiff stumbled and fell into a catch-basin, and the proof offered shows, that the plaintiff was injured by stepping into a sewer inlet situated several feet from the catch-basin. The second defense is, that the sewer inlet in question was constructed in accordance with a general plan devised through no error in · judgment under the direction of the municipal authorities.

*First*—As to the variance. It is true, that the second count of the declaration charges that the defendant permitted a certain catch-basin below the intersection of said streets to remain open and uncovered, and that it did not place guards or barriers around the same, nor lights so as to give warning and protect passers-by, and that plaintiff fell into said catch-basin. But the first count alleges, that the defendant permitted "a deep and dangerous hole over and into a certain catch-basin below said streets to remain open and uncovered." Proof, that the defendant fell into a hole, is not at variance with the allegation that he fell into a "hole over and into a certain catch-basin;" the hole was really a sewer inlet, designed to carry the water off into the catch-basin.

But if there was a variance in the respect thus indicated between the declaration and the proof, the question of such variance is not properly raised and preserved in the record. At the conclusion of the plaintiff's evidence, counsel for defendant moved to strike out the plaintiff's testimony on the ground of variance between the declaration and the proof, but the motion did not point out what the variance was, or in what it consisted. Where the defendant moves to strike out plaintiff's evidence on the ground of variance, it is incumbent on him to point out in what the variance consists, so as to enable the court to pass upon the question intelligently, and also to enable the plaintiff to amend his declaration, so as to make it conform to the proof, and to avoid defeat upon a point not involving the merits of the claim. (*Libby, McNeill & Libby* v. *Scherman*, 146 Ill. 540; *Lake Shore and Michigan Southern Railway Co.* v. *Ward*, 135 id. 511.) In addition to this, there is evidence tending to support the allegation of the declaration, that the hole was over and into a catch-basin; and, therefore, the question of variance upon the plaintiff's whole proof was one of fact, which has been decided against appellant. "The question presented, as to whether the negligence proved differs from that in the declaration, is also a question of fact, where there is any evidence tending to support the declaration." (*Harris* v. *Shebek*, 151 Ill. 287). For the reasons thus stated, we think there is no force in the objection, that there was a variance between the declaration and the proof.

*Second*—As to the construction of the sewer inlet in accordance with the general plan. The question, sought to be raised upon this branch of the case, arises out of the refusal of the court to give the refused instructions of the defendant, which are set out in the statement preceding this opinion. It is well settled, that municipal corporations have certain powers which are discretionary or judicial in character, and certain powers which are ministerial. The powers of such corporations have also

been divided into those which embrace governmental duties, such as are delegated to the municipality by the legislature, and in the exercise of which the municipality is an agent of the State; and those powers which embrace *quasi* private or corporate duties, exercised for the advantage of the municipal locality and its inhabitants. Municipal corporations will not be held liable in damages for the manner in which they exercise, in good faith, their discretionary powers of a public, or legislative, or *quasi* judicial character. But they are liable to actions for damages when their duties cease to be judicial in their nature, and become ministerial. (2 Dillon on Mun. Corp. secs. 949, 832; Tiedeman on Mun. Corp. sec. 324). Official action is judicial where it is the result of judgment or discretion. Official duty is ministerial, when it is absolute, certain and imperative, involving merely the execution of a set task, and when the law which imposes it, prescribes and defines the time, mode and occasion of its performance with such certainty, that nothing remains for judgment or discretion. (*People* v. *Bartels*, 138 Ill. 322). A corporation acts judicially, or exercises discretion, when it selects and adopts a plan in the making of public improvements, such as constructing sewers or drains; but as soon as it begins to carry out that plan, it acts ministerially, and is bound to see that the work is done in a reasonably safe and skillful manner. (2 Dillon on Mun. Corp. sec. 1048, note 1). A municipal corporation acting in good faith is not liable for any error of judgment in constructing a system of drainage. (2 Dillon on Mun. Corp. sec. 1046, and note; 15 Am. & Eng. Ency. of Law, pp. 1148-1150). In *City of Springfield* v. *LeClaire*, 49 Ill. 476, we said (p. 478): "Admitting that the power to construct sewers is discretionary as to the time of its exercise, yet when exercised it must be in such a manner as not to expose others to injury; a corporation like individuals is required to exercise its rights and powers, and with such precautions, as shall not subject others to injury."

It has been said, that the work of constructing gutters, drains and sewers is ministerial, and that the corporation is responsible in civil actions for damages caused by the careless or unskillful manner of performing the work.     (2 Dillon on Mun. Corp. sec. 1049).     It is the duty of a municipal corporation, which exercises its power of building sewers, to keep such sewers in good repair, and such duty is not discretionary but purely ministerial. (1 Shearman & Redfield on Negligence, sec. 287; 2 Dillon on Mun. Corp. sec. 1049).     The adoption of a general plan of sewerage involves the performance of a duty of a *quasi* judicial character, but the construction and regulation of sewers and the keeping of them in repair, after the adoption of such general plan, are ministerial duties, and the municipality, which constructs and owns such sewers, is liable for the negligent performance of such duties. (1 Beach on Public Corp. sec. 766; *Johnston* v. *District of Columbia*, 118 U. S. 19; *Seifert* v. *Brooklyn*, 101 N. Y. 136).

By the terms of the City and Village act, which has been adopted by the city of Chicago, the city council in cities has power to lay out, to establish, open, alter, widen, extend, grade, pave or otherwise improve streets, alleys, avenues, sidewalks, wharves, parks and public grounds, and vacate the same; to regulate the openings therein for the laying of gas or water mains and pipes, and the building and repairing of sewers, tunnels and drains, and erecting gaslights; to construct and keep in repair culverts, drains, sewers, and cesspools, and to regulate the use thereof.     (Rev. Stat. 1874, chap. 24, art. 5, sec. 63.)     The city, being thus required by law not only to construct but to keep in repair its culverts, drains, sewers and cesspools, is liable in damages for a neglect to perform said duties.     It has always been the doctrine of this court, that, while the legal obligation of the city to construct gutters and grade and pave streets is one voluntarily assumed, yet that, when the city constructs these improvements for the benefit of the public, it then

becomes the duty of the city to see that they are kept in repair. (*City of Alton* v. *Hope*, 68 Ill. 167; *City of Chicago* v. *Gallagher*, 44 id. 295; *Nevins* v. *City of Peoria*, 41 id. 502; *City of Joliet* v. *Verley*, 35 id. 58; *Roberts* v. *City of Chicago*, 26 id. 249; *City of Bloomington* v. *Bay*, 42 id. 503; *City of Lacon* v. *Page*, 48 id. 499; *Browning* v. *City of Springfield*, 17 id. 143.)

Counsel for the appellant invoke the doctrine, which seems to prevail in the State of Michigan, that, while complaint is made that the original plan of a city improvement is so devised as to render the work dangerous when completed, the fault found is with legislative action, and that a suit grounded upon it is grounded upon a wrong attributable to the legislative body itself; that the wisdom and propriety of local legislative action can not be made a judicial question; that it is and must be a political question, and can arise only between the legislator and his local constituency. The Michigan doctrine is announced in the two cases of *City of Detroit* v. *Beckman*, 34 Mich. 125, and *City of Lansing* v. *Toole*, 37 id. 152. It is to be remembered, however, that, in Michigan, a city is not liable for failure to keep its streets and sidewalks in repair, and that, in that State, the duty of keeping them in repair is a duty to the public, not to private individuals, and the mere neglect of such duty is a nonfeasance only; and that no action arises for an injury resulting from such neglect; no distinction being there held to exist between the liability of cities, and that of towns and counties. (*City of Detroit* v. *Blackeby*, 21 Mich. 84; *City of Detroit* v. *Osborne*, 135 U. S. 492; 1 Beach on Public Corp. sec. 759.) Such a doctrine, however, does not prevail, where, as in this State, the jurisdiction and control over the streets and their improvements are conferred upon the municipal government, so that there follows the obligation to keep the streets and sidewalks free from obstructions, and in a reasonably safe condition. (*Hinds* v. *City of Marshall*, 22 Mo. App. 208; 2 Dillon

on Mun. Corp. sec. 1046, note 1; 2 Thompson on Negligence, p. 736.) Moreover, in *Town of Waltham* v. *Kemper*, 55 Ill. 346, this court referred to and refused to follow the decisions of the Supreme Court of Michigan upon this subject, and, in referring to the case of *City of Detroit* v. *Blackeby*, *supra*, spoke with approval of the dissenting opinion of Mr. Justice COOLEY in that case. A distinction is taken, in the text books and in many of the cases, between the liability of purely municipal corporations, such as cities and chartered towns and villages, and the non-liability of counties and towns as political divisions of the State; such towns and counties being held to be exempt from liability, while chartered cities and villages are held to be subject to such liability. (1 Beach on Public Corp. sec. 757; Tiedeman on Mun. Corp. sec. 339.) This distinction was recognized by this court in the recent case of *Nagle* v. *Wakey*, 161 Ill. 387, where it was said (p. 392): "The courts draw a distinction between the town and the municipal corporation proper, on the question of liability, in favor of the town." The distinction is furthermore referred to and recognized in the following cases: *Browning* v. *City of Springfield*, *supra;* *Town of Waltham* v. *Kemper*, *supra;* *White* v. *County of Bond*, 58 Ill. 297; *Symonds* v. *Clay County*, 71 id. 355.) The reason for the distinction, as given by this court in the cases above referred to, is, that cities and chartered towns and villages act under charters, by which valuable privileges are conferred upon them at their request, these privileges being held to be a consideration for the duties imposed upon them; and for the performance of these duties, like individuals, they must be responsible in an action. (*White* v. *County of Bond*, *supra*). Such organizations are the result of the action of the people, impelled thereto by considerations affecting, more or less, their private interest, while counties and towns do not become so at the special request of the people. Such counties and towns are "involuntary *quasi* corporations, being political

or civil divisions of the State created by general laws to aid in the general administration of the government." (*Symonds* v. *Clay County, supra*). Cities are regarded as corporations created for their own benefit, while the inhabitants of a district invested by statute, *in invitum*, with particular powers, are made corporations without their consent. (*Town of Waltham* v. *Kemper, supra*).

The rule of exemption, growing out of the discretionary powers with which cities are invested in the matter of arranging plans for the prosecution of public improvements, and where they act under the advice of skilled and experienced persons, is carried too far in the Michigan cases referred to; the rule should not be construed, so as to relieve "the city from liability when the plan devised, if put in operation, leaves the city's streets in a dangerous condition for public use." (Tiedeman on Mun. Corp. sec. 350.) Legislative authority only relieves municipal corporations, which make public improvements, from responsibility for the necessary and usual results of a proper exercise of the powers conferred upon them. (15 Am. & Eng. Ency. of Law, 1154.) But the necessary and usual results of the proper exercise of such powers do not include such negligent and unskillful performance of the work as exposes travelers upon the public streets to unusual dangers. (*City of North Vernon* v. *Vogler*, 103 Ind. 314.) In the case at bar, the declaration does not charge, that the plan of the public improvement was defective, but it charges that the city neglected to keep the crossing of the two streets, named in the declaration, in good repair. If there was any evidence as to the plan adopted by the city for the construction of the sewer inlet to the catch-basin, it was included in a specification for the material and the construction of sewers introduced by appellant, which contained the following provision, to-wit: "The contractor shall leave an inlet to the basin, on the side next to the curb, under the cover, to receive the water from the gutters, eight inches wide and twelve

inches deep." If the sewer inlet had been constructed in accordance with the plan, it would have been only eight inches wide and twelve inches deep; but the proof tends to show that it was about two and a half feet wide, and two and a half feet deep, and three feet long. The tendency of the proof was to show, that, whatever the size of the hole had been originally under the plan of the city, it had become enlarged, and was out of repair; and that the paving-blocks and dirt had been washed away; and that the only gutter was a furrow through the mud. The refused instructions of the appellant referred only to the original construction of the sewer, and ignored the question, whether or not the same, after it was constructed, had been kept in proper repair; they ignored the doctrine, that where the city has adopted a plan and created an existing condition in a street in pursuance thereof, if that condition renders the street unsafe, the city must go further and perform the duty cast upon it, growing out of the statute, to exercise ordinary care to make the street, thus encumbered with the product of its plan, reasonably safe for public travel. For this reason the court committed no error in refusing the instructions asked by the city.

We do not think, that there was any error in the admission of the evidence of the expert witness who was examined by the plaintiff. His testimony was directed to the point that, if the opening or sewer inlet to a catch-basin is more than one foot wide, it is practicable to put an iron grating over it. It appeared that the witness had been a sewer-builder for the city for eighteen years, and was familiar with the construction of catch-basins, inlets and openings of sewers.

The judgments of the Appellate Court and of the Superior Court of Cook county are affirmed.

*Judgment affirmed.*