Village of Palestine v. Siler.

---

## Village of Palestine v. X. F. Siler, Administrator.

1. NEGLIGENCE—*municipal corporation conducting lighting plant liable for.* Municipal corporations, such as cities and villages, are, as distinguished from counties and towns, liable for negligence resulting in personal injuries arising from the conduct of municipal lighting plants.

Action on the case for death caused by alleged wrongful act. Appeal from the Circuit Court of Crawford county; the Hon. JACOB R. CREIGHTON, Judge, presiding. Heard in this court at the February term, 1906. Affirmed. Opinion filed September 14, 1906.

ABE L. MAC HATTON, CALLAHAN & JONES and EAGLETON & BAKER, for appellant.

BRADBURY & MAC HATTON and MAXWELL & JONES, for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

Appellee brings this suit as administrator of Lee H. Stout, deceased, to recover damages for the death of his intestate, alleged to have been caused by the negligence of the Village of Palestine in the maintenance of certain wires in the streets of the village, used in connection with a system of electric lighting. There was a verdict against the village for $2,000, to review which it has appealed to this court.

There is very little contention as to the facts in the case. It was shown by the evidence that appellant maintained an electric light plant, which was used for the purpose of lighting its public streets, and also furnished lights for some of the residences of its inhabitants. One of the street lights was placed at the intersection of Grand Prairie and Wilson streets, suspended from wires attached to poles, located at diagonal corners at the intersection of the streets, one at the southwest and the other at the northwest corner. These poles were twenty-five feet high and the electric light wires running from the plant to the lamps were attached to pins furnished with glass insulators, fastened on cross-arms, near the tops of the poles. From a point about a foot below the cross-arm on the electric light pole, located near the southeast corner of the intersection of said streets, an insulated guy wire extended diagonally across the sidewalk in a south-

easterly direction, to another pole located some forty inches south of the sidewalk and one foot west of the east line of Wilson street, to which the wire was attached about five feet from the ground. Some days previous to the time of the injury, the pin holding one of the electric light wires to the arm on the pole last mentioned became broken, and the wire, with the insulator attached, dropped down on the guy wire, the insulation on the electric wire became worn and defective and the current of electricity passed therefrom to the guy wire. At about 11:30 P. M. on Saturday, May 25, 1905, Lee H. Stout, who was clerking in the store of Frank Deitz, in the village, was going home in company with his employer, walking west along Grand Prairie street. Stout was on the north side of the walk leading his bicycle with his right hand. As they approached Wilson street, Stout remarked: "That light is not on again to-night;" and near the corner Deitz, who was on the south side of the walk, stopped a moment, passed behind Stout and started in a northwesterly direction across the street. When he had gotten about half way across the street, he saw something like a flash of lightning and heard a rumbling noise, looking back he saw sparks from the guy wire and calling to Stout, received no answer. He then started back and just as he came up to him, saw Stout's right hand slip off the guy wire as he fell beside the post.

There was evidence tending to show that the electric light wire, with the insulator attached, had been down on the guy wires since the previous Thursday; that some boys had received an electric shock by coming in contact with the guy wire early in the evening of the day Stout was injured, and that notice of the defective condition of the wire had been given to O. B. Bagshaw, who had charge of the electric light plant for the village, from one to two hours prior to the injury.

Appellant urges a number of reasons for the reversal of the judgment, but the two matters principally relied upon by it, both of which were raised by proper

pleas to the declaration, are (1) that in lighting the streets it was exercising its authority under the police power given it by statute, and was therefore in so doing not liable for the negligence of its officers; and (2) that the village had no legal right to furnish electric light to private parties for hire; that its acts in so doing were *ultra vires* and that it could not be held liable for the acts of its servants not done within the scope of its corporate powers.

Each count of the declaration set out that the electric light plant was maintained for the dual purpose of lighting the streets of the village and furnishing electric lights for hire to such of the citizens as were using electric lamps, but they do not state specifically for which purpose the defective wires which carried the current which caused the death of Stout were used. Upon the trial, however, it was agreed by the parties, and the agreement made part of the record, that the wire which occasioned the injury to Stout, was one of the wires used by the village for the purpose of lighting the streets. The effect of this stipulation was to eliminate the second proposition above mentioned, still leaving the first for consideration, for if, as agreed upon, the injury was caused by the defect in a wire used in lighting the streets, which was a business the village had a right to engage in, then it is immaterial whether the other business in which the village is said to have been employed in connection with its electric light plant was, or was not, *ultra vires*.

The contention on this subject in appellant's brief is, that in Illinois the code of police powers granted to municipal corporations gives them authority to provide for lighting the streets; that this is "the delegation of one of the powers of the state to a municipal corporation to provide for the general welfare of the people;" that no matter how negligently the state might exercise such a power, it would not be liable in the courts for injuries, and that if the state would not be liable, the municipality, operating under the author-

ity delegated by the state, is not liable. A distinction, however, is observed, both in the general text-books and in the reports of the higher courts of this state, between the rules applicable to purely municipal corporations such as cities and villages and to counties and towns, upon this question, the cities and villages being held subject to liability, while the counties and towns are held to be exempt from liability. In speaking of the liability of towns our Supreme Court, in the case of Nagle v. Wakey, 161 Ill. 387, said: "The reasons always given for exempting towns from such actions (for personal injuries) are, that they are established as local subdivisions and agencies of the state for governmental purposes and that duties are imposed upon them without their assent, exclusively for public purposes;" also, "The courts draw a distinction between the town and the municipal corporation proper, on the question of liability, in favor of the town."

The same question is discussed at some length in the City of Chicago v. Seben, 165 Ill. 371, where a number of cases recognizing the distinction are referred to in connection with the following language: "The reason for the distinction as given by this court in the cases above referred to, is that cities and chartered towns and villages act under charters, by which valuable privileges are conferred upon them at their request, these privileges being held to be a consideration for the duties imposed upon them; and for the performance of these duties, like individuals, they must be responsible in an action."

The section of the statute which gives the city and village the power to provide for lighting the streets, also gives them the power to construct and keep in repair culverts; drains, sewers and cesspools and to regulate the use thereof. No good reason appears why a city or village should not be held to the same liability for damages resulting from defects in the means used by it for lighting purposes, as from defects resulting

from the imperfect construction and maintenance of gutters, drains and sewers.

In the City of Chicago v. Seben, *supra,* the plaintiff brought suit for personal injuries incurred by stepping into a sewer inlet, which it was alleged the city had negligently permitted to remain open and uncovered. In discussing the question of the liability of the city for injuries so caused, the same opinion contains the following language: "It has been said, that the work of constructing gutters, drains and sewers is ministerial, and that the corporation is responsible in civil actions for damages caused by the careless or unskillful manner of performing the work. (2 Dillon on Mun. Corp., sec. 1049.)

It is the duty of a municipal corporation, which exercises its power of building sewers, to keep such sewers in good repair, and such duty is not discretionary, but purely ministerial. (1 Shearman & Redfield on Negligence, sec. 287; 2 Dillon on Mun. Corp., sec. 1049.) The adoption of a general plan of sewerage involves the performance of a duty of a *quasi*-judicial character, but the construction and regulation of sewers and the keeping of them in repair, after the adoption of such general plan, are ministerial duties, and the municipality, which constructs and owns such sewers, is liable for the negligent performance of such duties. (1 Beach on Public Corp., sec. 766; Johnston v. District of Columbia, 118 U. S. 19; Seifert v. Brooklyn, 101 N. Y. 136.)"

The same section of the statute also provides for establishing sidewalks. Reported cases, almost without number, establish the right of one injured by the defective construction or imperfect maintenance of a sidewalk, to bring suit for personal injuries. It appears to us that a city or village should be and is bound to the same care in maintaining the appliances used for lighting its streets, that it is in maintaining its sidewalks, used by pedestrians in traversing the streets. Whether the city had actual or constructive

notice of the condition of the wire, and whether deceased was in the exercise of due care and caution for his own safety previous to and at the time of the injury, were questions of fact for the consideration of the jury under the evidence, and we are content with their verdict on those questions. The instructions as a series, stated the law applicable to the case with substantial accuracy and contained no material error.

The judgment of the court below is affirmed.

*Affirmed.*