City of Chicago, Appellant, v. William Reid, Jr., Appellee.

Gen. No. 13,400.

1. PRACTICE—*when newly discovered evidence not ground for new trial.* Newly discovered evidence of an impeaching character is not ground for new trial.

2. NEGLIGENCE—*when sidewalk defectively constructed.* It is a question for the jury whether a sidewalk constructed at a distance above the ground is defective and dangerous if unprovided with guard rails. So held in a case where the evidence showed that the particular sidewalk was in constant use by children.

3. VERDICT—*when not excessive.* A verdict for $2,000 in an action for personal injuries is not excessive where it appears that the plaintiff, a boy of the age of about four years, received as a result of the accident a permanent injury in the nature of a deformity.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in this court at the October term, 1906. Affirmed. Opinion filed June 11, 1908.

**Statement by the Court.** This is an appeal by the City of Chicago from a judgment of the Superior Court against it and in favor of the plaintiff, William Reid, Jr., for $2,000, entered July 19, 1906. The judgment was entered on the verdict of a jury in an action on the case for a personal injury through the negligence of the defendant.

The declaration originally consisted of two counts, to which, however, two other counts were added by amendment.

When the first two counts were filed certain persons doing business as Agnew & Co. were co-defendants with the City of Chicago. The suit was discontinued against them before the two additional counts were filed.

The first count charges that these contractors, Agnew & Co., on October 6, 1901, were engaged in setting certain foundations for the structure of the Metropolitan Elevated Railroad, and for a station thereof, at or near the point where Twenty-first street crosses Kedzie avenue, which streets were public streets under the control of the defendant; that these contractors had placed a plank upon the sidewalk of Kedzie avenue, which sidewalk was in the possession and control of the city; that one end of this plank rested on the ground and the other end upon the sidewalk, extending between six and twelve inches over it; that the city on October 6, 1906, and for a long time prior thereto, knew that the contractors had placed said plank on said sidewalk, and that it had been allowed to remain there for an unreasonable time, or by the exercise of reasonable care might have known of these things in time to have caused it to be removed; that nevertheless it negligently allowed the plank to remain on the sidewalk, knowing it to be a dangerous obstruction; that in consequence the plaintiff, a child four years old, lawfully passing along said sidewalk with due care and caution for a child of his age, stumbled over the end of said plank which was protruding over said sidewalk, and fell three or four feet to the ground, breaking a leg and suffering other injuries.

The second count first charges that on the date of the accident the City of Chicago was "maintaining and assuming control" over the sidewalk in question, "which sidewalk aforesaid was at an elevation of from three to four feet above the surface of the ground and had no railing or protection on either side," in consequence of which it became and was exceedingly dangerous and unsafe for persons passing along and over said

walk. It then sets out certain ordinances of the City of Chicago prohibiting obstructions on sidewalks and requiring policemen to endeavor to remove any that may exist, and if not able to do so to report them to the Department of Public Works, which shall remove them. It then alleges the location of the plank on the sidewalk, the knowledge of the city thereof, the negligence of the city in allowing it to remain there, and the accident of the plaintiff in consequence thereof, substantially as does the first count.

The first additional or third count of the declaration alleges the control by the city of the sidewalk in question, and that it, at the date of the accident and for a long time prior thereto, negligently maintained the same at an elevation of from three to five feet above the ground, without placing any railing or guard along its edge; that this construction and maintenance were exceedingly dangerous and unsafe, which the City of Chicago knew or should have known; also it alleges that a plank used about the construction of a station for the Metropolitan Elevated Railroad Company had, prior to the date of the accident, been so placed on the sidewalk that the end of the plank projected over the sidewalk about one foot, and that the city negligently, although having notice of this situation, allowed it to remain there; that the plaintiff, as described in the other counts, stumbled over the end of the plank, and "through the negligence of the defendant in permitting said plank to remain upon said sidewalk, and through the negligence of the defendant in failing to erect guards or a railing along the edge of said sidewalk," the plaintiff fell, etc.

The second additional or fourth count avers that the described sidewalk was much frequented by the public and by small children passing along and over the same, and that it became and was the duty of the defendant, the City of Chicago, to erect a railing or guard along the side of said walk to prevent the public and especially small children from falling from the same; but

that nevertheless the city negligently erected and maintained the sidewalk at an elevation of from three to five feet above the level of the ground, without such guards, which, so constructed and maintained, was exceedingly dangerous; all of which was known to the defendant. The count then describes the accident to the plaintiff as happening from his tripping over the plank which was protruding over the edge of the sidewalk, and charges that "by and through the negligence and carelessness of the defendant, the City of Chicago, in failing to erect a guard or railing along the edge of said sidewalk where the same is elevated above the ground, said plaintiff fell from said sidewalk to the ground, a distance of from three to five feet," and was injured, etc.

To all these counts the City of Chicago pleaded the general issue. After the verdict had been rendered, the defendant moved for a new trial, basing the motion partly on an allegation of newly discovered evidence, supported by affidavits of various persons. The motion was denied.

In this court the appellant has assigned errors, alleging: That the verdict and judgment are contrary to the law and the evidence; that the court erred in not taking the case from the jury by a peremptory instruction in its favor; that the court erred in overruling the motion for a new trial; in entering judgment on the verdict; in admitting improper evidence for the appellee; in excluding proper evidence for the appellant; in giving improper instructions asked by the appellee, and in refusing to give proper instructions asked by the appellant; and also in modifying instructions asked by appellant and giving them as modified.

It also alleges that the damages are excessive, and that the verdict is the result of passion and prejudice.

FRANK D. AYERS, for appellant; EDWARD C. FITCH and HARRY W. STANDIDGE, of counsel.

McCASKILL & SON, for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

The decision of this appeal has been delayed much beyond the time at which it would have been made had we not hoped since the submission of the cause and its first consideration by us, for decisive utterances from the Supreme Court on some of the questions discussed by counsel. But the cause pending in the Supreme Court, to which we looked for such help, has been disposed of on a question of jurisdiction without an investigation of its merits or the propositions of law involved in it. We have, therefore, re-investigated the case at bar and reached an unanimous opinion that although in many of its aspects presenting close questions, the judgment should be affirmed.

The contention of the plaintiff in this case is twofold. It is that the city has the duty of keeping its sidewalks free from dangerous obstructions (it being conceded, of course, that this duty is dependent on the knowledge of the obstruction by the city or the opportunity and obligation to acquire such knowledge), and that it has also the duty of constructing and maintaining guard rails on its sidewalks when their edges are so far above the ground that they would be dangerous otherwise. Both these duties, it is said, were neglected.

The first count of the declaration is based on the first contention entirely; the second and third counts upon both. These two counts allege both duties and the concurrent violation of both by the defendant, resulting in the accident. The fourth count is based on the second contention alone.

It is urged by the defendant that the verdict was against the weight of the evidence. This position, however, involves the assumption, to be hereafter noticed, that the fourth count of the declaration did not state a cause of action—in other words, that it was not a question for the jury whether the absence of guard rails made the sidewalk dangerous, and was by itself negligence which was the proximate cause of the accident. On this assumption the counsel for the defendant says:

City of Chicago v. Reid.

"The question of appellant's negligence, therefore, hinges on the alleged protrusion of the plank upon the edge of the sidewalk. On this point we think the evidence far short of a preponderance." He also says: "We submit that even the alleged accident is not established by a preponderance of the evidence." The meaning of this last remark is not that the child who is plaintiff here did not break his leg on the afternoon of October 6, 1901, but that it is not satisfactorily proved that he did it by falling off the sidewalk.

It is the theory of the defendant, as we understand it, that the plaintiff's fall was from the plank mentioned in the declaration, and not from the sidewalk; that instead of stumbling over the plank and in consequence falling off the unguarded elevated sidewalk, he was trying to get on the plank between the sidewalk and the street, while his sister was playing on it, and so fell. Of this it seems sufficient to say that the question how the accident occurred was for the jury, and that the jury were instructed that in order to find for the plaintiff they must believe that "the plaintiff while passing along and over said sidewalk stumbled and fell over a plank sticking up on the side of said walk." We see no sufficient reason to reverse or even criticise their finding in this respect.

The only eye-witness of the accident who testified was the boy's sister, Mary Reid, and she says: "I was walking with my brother from my home. We were just out for a walk. * * * We were walking along and he had hold of my hand; presently he let go and tripped over the board that was extending from the terrace over the sidewalk. He tripped over a plank. The plank was about eighteen inches wide and about two inches thick. It stuck about a foot above the walk. The other end of the board was down on the ground. * * * At the time he fell over the board he let go of my hand. * * * When he fell over the board he fell on the ground." Cross-examination failed to shake her in this story, but counsel for defendant urge that it pro-

duced evidence tending to show that she told a different story to the foreman of the contractors mentioned in the declaration, three or four months after the accident; that she then said that she "was on the plank jumping on it and causing it to spring up and down, and that her little brother, in trying to get on to the plank, slipped and fell over it, and fell into the vacant lot." This was impeaching, but not conflicting or controverting testimony. Its weight was to be determined by the jury in considering what it was their especial function to consider—the credibility of the witness Mary Reid. We must suppose they did so.

It seems to be not an inappropriate place here to note that the alleged newly discovered evidence was of the same nature, but of a greatly inferior kind. It was not controverting evidence of anything, but only that Mrs. Reid, the mother of the plaintiff, had told a man on the day after the accident that her son had fallen from the plank while attempting to walk down the same, and that the injury was his own fault and no one else was to blame for it. As nobody pretends that Mrs. Reid saw the accident, and she must be presumed to have heard the story of it from the boy and his sister, the evidence, if it could be made under legal rules competent and admissible at all—which would seem impossible—would only tend to discredit the girl's testimony, not to establish anything else independently. The court committed no error in ignoring this alleged cause for a new trial.

On the matter, however, of the protrusion of the plank over the edge of the sidewalk, so as to make a dangerous obstruction, and its having been there a sufficient time to impute knowledge of that obstruction to the city, there is in a sense a conflict of evidence which leaves it doubtful just how far the board over which the plaintiff is said to have stumbled extended over the sidewalk and how long it had been there and who put it there. But notwithstanding this, there was evidence enough that the plank was placed there by the con-

City of Chicago v. Reid.

tractors for the Metropolitan Elevated Railroad Company and used by them in the course of their work, and had constituted an obstruction on the sidewalk for a sufficient time to impute notice therefrom to the city, to warrant the jury, if they believed it, in so finding the fact to be. We could not disturb the verdict of the jury, even if it necessarily rested on such a finding as possible or even probable, as it might seem to us that the board in question had been used in play by children in the vicinity and pulled up and down with relation to the sidewalk, at their pleasure.

Again, whether the obstruction, if the jury believed it to have existed, was in itself a dangerous obstruction to one like the plaintiff—too young to be guilty of negligence—was a question for the jury; so that even if we accepted the hypothesis of the defendant's counsel that the absence of guard rails or other protection on the edge of this elevated sidewalk, and the control and maintenance of it in that condition by the city, could not render the city liable in this action, we could not see justification for a reversal of this judgment on the weight of the evidence. But, as a matter of fact, we do not and cannot accept that hypothesis, and it certainly was not on that hypothesis that the cause was submitted to the jury by the trial judge in the Superior Court.

The jury were instructed by him, in the first given instruction, that they were to determine whether the defendant was guilty of the negligence charged in any one of the counts of the declaration. The fourth count alleged the negligence to be only the erection and maintenance of a sidewalk much frequented by children and at an elevation of from three to five feet above the level of the ground, without guard rails, so that it was dangerous, and the question whether this was true was left to the jury, and thus they were, in effect, instructed that if they believed from the evidence that it was true, they should find for the plaintiff.

In the second instruction given the alleged stumbling

over a plank by the plaintiff was mentioned incidentally as preliminary to the fall, but negligence was not mentioned in connection with the plank. The jury were told that if they believed that the plaintiff "fell from the sidewalk to the ground *by reason of a failure*" (of the defendant) *"to erect guard rails or protection,"* they should find the defendant guilty. The claim of the plaintiff is by this made to rest on the failure to provide protection for the sidewalk, elevated as it was above the ground. That the theory of this instruction was adopted by the court below is in reality the chief objection of the defendant to the conduct of the trial, and its chief reliance for a reversal of the judgment.

There is no dispute about the height of the sidewalk from the ground. All the witnesses practically place it at from three and one-half to four feet. Nor is it disputed that it had been constructed for a good while and maintained in that condition, nor that many children were in the habit of using it and playing about it.

On this state of facts the following instruction was given to the jury, being the second one hereinbefore alluded to:

"The court instructs the jury that if you believe from the evidence that the sidewalk where the accident is said to have occurred had been erected by the defendant at an elevation of several feet above the surface of the ground without any guard rails or protection of any kind on either side of said walk, and had been maintained in that condition up to the time of the accident in question, and if you believe from the evidence that said sidewalk, by reason thereof, was dangerous and unsafe, and exposed the public to dangers through some mishap or accident which might reasonably be expected to follow as an incident to the use of said sidewalk in such condition; and if you further believe from the evidence that the plaintiff, while passing along and over said sidewalk, stumbled and fell over a plank sticking up on the side of said walk and fell from the sidewalk to the ground, by reason of a failure to erect guard rails or protection, and sustained

the injuries alleged in his declaration, then you will find the defendant guilty.''

It is claimed by the appellant that this instruction is bad, and on this claim rests, as we have said, the chief objection to the judgment.

Counsel say that the instruction ''is bad because it permits the jury to review the discretion legally vested in the city in deciding to build a sidewalk without guards or railings. It is conceded that the sidewalk was sound and well constructed; the negligence charged is that the city did not include railings in its plan of construction of this piece of sidewalk. It is the alleged defect in the plan of sidewalk adopted, and not the defective execution of the plan, that is charged as negligence.''

Several cases are cited and discussed by appellant in support of the proposition that this was erroneous, because, counsel say: ''Where power is conferred upon a municipal corporation to make local improvements, its exercise is *quasi*-judicial or discretionary, and for a failure to act or an erroneous estimate of the public needs a civil action cannot be maintained against it.''

The same cases were cited and discussed by us in Healy v. The City of Chicago, 131 Ill. App. 183, in which, under the criticism of a strong dissent from Mr. Justice Adams, the majority of the court held—repudiating the principle of a previous decision of this court and giving great force to the argument *ab inconvenienti*—that the jury were only entitled to pass on the liability of a city for an accident resulting from an accepted method of construction of a sidewalk, when as a matter of law the court could say that the accepted method of construction was dangerous.

But this doctrine was applied in that case merely to a want of strictly equal elevation between connecting sidewalks, and was so applied, as we said, because ''for various reasons reaching far back into the history of Chicago the sidewalks of Chicago are not all on the same level, even on the same street or on the same side

of the street. The city has allowed these sidewalks with slight differences of level between respective lots to remain and has accepted as sufficient well constructed sidewalks adjoining each other but not on a level."

We still adhere to the doctrine of the Healy case with reference to the state of facts there disclosed, although in view of the division of the court in that case and the criticism which some of the opinions of other tribunals on which it is largely based have received from our Supreme Court (City of Chicago v. Seben, 165 Ill. 371), we regret that the Supreme Court did not have the opportunity to review the same. But in the Seben case (*supra*) the Supreme Court say: "The rule should not be construed so as to relieve the city from liability when the plan devised, if put in operation, leaves the city's streets in a dangerous condition for public use. Legislative authority only relieves municipal corporations which make public improvements from responsibility for the necessary and usual results of a proper exercise of the powers conferred upon them. But the necessary and usual results of the proper exercise of such powers do not include such negligent and unskillful performance of the work as exposes travelers upon the public streets to unusual dangers. In the case at bar the declaration does not charge that the plan of the public improvement was defective, but it charges that the city neglected to keep the crossing of the two streets named in the declaration in good repair. * * * The refused instructions * * * ignored the doctrine that where the city has adopted a plan and created an existing condition in a street in pursuance thereof, if that condition renders the street unsafe, the city must go farther and perform the duty cast upon it, growing out of the statute, to exercise ordinary care to make the street thus encumbered with the product of its plan reasonably safe for public travel. For this reason the court committed no error in refusing the instructions asked by the city."

We think that the matter of unguarded sides of a sidewalk at some particular place four feet or so from the ground, may be more properly considered to come within the term "defective construction" than "defective design." It is but a half completed structure for the purpose for which it is designed, as much so as though every other board were missing. Even if it were a matter of design, rather than of construction, it could be, we think, properly pronounced by the court unsafe, as a matter of law.

But it is needless either to show that the principle on which we must decide this case is consistent with the doctrine announced in the Healy case *supra*, or to point out how much this case differs from that in its facts and may be distinguished in the rules of law applicable, for unlike the question of inequalities in adjacent sidewalks, on which we had only the previous opinions of our own court, and not those of the Supreme Court, to guide us, this matter of the absence of rail protection in elevated sidewalks has been passed on by the Supreme Court.

In a case where a municipality made a passageway to a bridge several feet above the ground, the court said: "We have no hesitation in saying that the city was grossly derelict in its duty in the construction of the passageway in question without having sufficient guards for the protection of travelers." The City of Joliet v. Verley, 35 Ill. 58-64.

In the Village of Carterville v. Cook, 29 Ill. App. 495-500, the Appellate Court for the Fourth District used this language: "While it is not the duty of the municipal corporation in all cases where it raises its sidewalk above the adjacent ground to guard each side with railing or other barriers to prevent pedestrians from accidentally falling off, and the omission to provide such protection is not always negligence *per se,* creating liability, yet in cases analogous to the case at bar, where it is apparent that such protection is required to render the sidewalk reasonably safe for school

children daily using the same, and to prevent the occurrence of an accident which is likely some time to happen if such protection is not furnished, it has been held to be gross negligence on the part of the corporation to omit the duty to erect railings or other guards on the side of the walk adequate for the protection from the danger of falling therefrom of persons traveling thereon and exercising ordinary care and caution.''

The facts in this Carterville case were that a boy of fifteen years of age was passing along a much used public sidewalk at a point where it was elevated about six feet above the ground, and by reason of the inadvertent or negligent shoving of another boy against him, was jostled or pushed from the sidewalk and injured. The Supreme Court, in affirming the judgment of the Circuit and Appellate Courts in his favor, said that they concurred fully in the views expressed in the opinion of the Appellate Court which we have quoted above.

We must hold that the law was not incorrectly laid down to the jury, to the disadvantage of the defendant, in the instructions which were given in the case at bar, nor that the refusal complained of, of two offered by the defendant, was erroneous.

The fourth and sixth instructions tendered by the defendant told the jury that appellant's negligence must have proximately caused the injury to entitle the plaintiff to recover; and we agree with the counsel for plaintiff in the position that in view of the decision in Village of Carterville v. Cook, 129 Ill. 152, where the concurrent negligence of a third party was an element, the first refused instruction tendered by defendant would have been ''misleading unless an accurate definition of proximate cause were given.''

In view of what we have held was the law of Illinois, the second refused instruction should not have been given. The rule about the obligation as to railings is too broadly stated.

We are inclined to think the admission of sections

1846 and 1856 of the revised ordinances of the city was erroneous, but it was by no means a fatal error. It could have done no harm.

We do not think the damages so high as to be excessive and to show passion and prejudice.

The testimony of the boy's mother and of the attending physician, as we read it, tends to prove a deformity as the result of the accident, or at the very least an aggravation of a pre-existing deformity—that is, a permanent injury—besides the very considerable suffering which he underwent. The medical testimony for the defendant even did not contradict this.

The judgment of the Superior Court will be affirmed.

*Affirmed.*