MARK JEFFERSON, Plaintiff-Appellant, v. THE CITY OF CHICAGO, Defendant-Appellee.

First District (1st Division)   No. 1—93—1278

Opinion filed February 6, 1995.

John Bernard Cashion and Martin B. Forbes, both of Chicago, for appellant.

Susan S. Sher, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Frederick S. Rhine, Assistant Corporation Counsel, of counsel), for appellee.

JUSTICE WOLFSON delivered the opinion of the court:

## NATURE OF THE CASE

On May 7, 1987, the City of Chicago (City) was painting lines for pedestrian crosswalks at the southeast corner of the Halsted and Lake intersection. The east half of Halsted Street was closed. The west half of Halsted Street was used for one lane of northbound traffic and one lane of southbound traffic. Sometime that day the plaintiff's right arm was partially severed when the southbound Halsted Street bus he was riding in brushed a steel pillar.

The plaintiff's lawsuit against the City centered on the way in which the northbound traffic was diverted by the placement of traffic-regulating orange-colored cones.

The trial court granted the City's motion for summary judgment on two grounds: (1) the bus driver's conduct was an independent intervening act, breaking any causal connection between the City's conduct and the injury; and (2) the City's conduct was immunized by section 2—201 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act). See 745 ILCS 10/2—201 (West 1992).

Appellate review of an entry of summary judgment is *de novo.* (*In re Estate of Hoover* (1993), 155 Ill. 2d 402, 615 N.E.2d 736.) That

means we must independently examine the evidence presented for and against the motion to determine whether the movant established the absence of a genuine issue of material fact. (*Arra v. First State Bank & Trust Co.* (1993), 250 Ill. App. 3d 403, 621 N.E.2d 128.) We affirm in part and in part we reverse and remand.

## THE EVIDENCE

The driver of the Chicago Transit Authority (CTA) bus was inching his way through the intersection at about one mile an hour. The driver, Clarence Lampkin, pulled to his right when he saw a northbound truck coming at him. Lampkin said about the truck: "He pulled into the lane that was open for me and—causing me to slow up and stop, at which time I proceeded to get out of his way because I thought he was going to hit the bus the way he pulled over there. I think he was trying to make the light."

And then:

"Q. Did you steer your bus to the right to let the truck go by, or did the truck force your bus to the right?

A. I had to move to the right to avoid being struck by the truck."

That, he added, was the only way the truck could have cleared the bus.

The truck, said Lampkin in his deposition, squeezed between the bus and the line of cones in the middle of Halsted Street. When the bus stopped, its front end was even with the middle of a dumpster immediately in front of the bus. A vertical steel pillar that supports elevated train tracks was two or three feet in front of the right rear wheel of the bus. He had moved as close to the right curb as he could.

Once the truck passed, Lampkin started up again. As he moved forward, Lampkin turned the steering wheel to the left to get away from the dumpster. He then heard screaming in the back of the bus. Mark Jefferson, age 15, had been sitting in the rear of the bus with his right arm out the open rear window. The arm was partially severed from his body. He first sued the CTA and later the City of Chicago. The case against the CTA was settled.

In support of his claim against the City, the plaintiff filed the affidavit of Richard Michaels, an expert in human factors and vehicular traffic engineering. Later, Dr. Michaels was deposed.

Dr. Michaels relied to a large extent on the Manual on Uniform Traffic Control Devices (Manual). The substance of his testimony was that the cones were placed at an improper angle. That is, the placement of cones at a 35 degree angle over a distance of only 80 feet violated the mandates of the Manual.

Dr. Michaels said the failure to use the proper taper made it fore-

seeable that northbound traffic would encroach into the southbound lanes of Halsted Street. He also criticized the City's failure to set up a line of cones separating the northbound and southbound lanes.

## A. PROXIMATE CAUSE

The trial judge found that the bus driver's conduct was an independent intervening cause of the injury. That is, the bus driver decided to turn to the left after the truck had passed him. The placement of the cones may have caused the bus to stop and the near-miss with the truck, but once the truck had passed, said the judge, the causal connection between the cone placement and the injury was irretrievably broken.

The trial judge and the City in this appeal rely heavily on *Quintana v. City of Chicago* (1992), 230 Ill. App. 3d 1032, 1035, 596 N.E.2d 128, where a well-recognized principle of law was restated:

> "If the negligence charged does nothing more than furnish a condition by which the injury is made possible and that condition causes an injury by the subsequent, independent act of a third person, the creation of the condition is not the proximate cause of the injury where the subsequent act is an intervening efficient cause which breaks the causal connection between the original wrong and the injury, and itself becomes the proximate or immediate cause."

Framing the analysis in terms of "condition versus cause" does little to resolve questions of breach of duty and proximate cause in a particular case.

A recent supreme court decision tells us that the term "proximate cause" describes two distinct elements: "cause in fact and legal cause." *Lee v. Chicago Transit Authority* (1992), 152 Ill. 2d 432, 455, 605 N.E.2d 493.

The defendant's conduct is a factual cause of the plaintiff's injury if the conduct was "a material element and a substantial factor in bringing about the injury." Where reasonable minds can differ on the question, a jury must decide. *Lee*, 152 Ill. 2d at 455.

When investigating "legal cause," we are instructed to focus on the question of foreseeability: "[A] negligent act is a proximate cause of an injury if the injury is of a type which a reasonable man would see as a likely result of his conduct." *Lee*, 152 Ill. 2d at 456.

Comparative negligence principles diminish the need for a policy that protects the remotely negligent defendant from liability for the full measure of damages. *Filipetto v. Village of Wilmette* (1985), 135 Ill. App. 3d 781, 482 N.E.2d 358.

The purpose of our inquiry in this case is to determine whether

summary judgment was appropriate. Ordinarily, questions concerning breach of duty and proximate cause are factual matters for the jury to decide. *Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 156, 554 N.E.2d 223.

We turn to the facts of this case. We look to the kind of hazard that was created, its gravity, its relation in time and space to the injury, and whether the City's line painters could see this injury as a likely result of their conduct. There is no requirement that the sign painters could foresee the exact behavior of the bus driver or "the extent of the harm or the manner in which it occurred." (Restatement (Second) of Torts, § 435 (1965).) But the bus driver's conduct must be considered because "a legal duty arises only where a reasonably prudent person could have foreseen as likely the events which transpired." *Newsome v. Thompson* (1990), 202 Ill. App. 3d 1074, 1080, 560 N.E.2d 974.

Here, the City's conduct was active, not passive. The City created the hazard. The placement of the cones directed the path of northbound traffic onto the western half of Halsted Street. The truck driver had no choice. He went where he was told to go. The risk was serious and not remote if the plaintiff is right about the City's negligent failure to create a proper channel for traffic.

■ A jury could conclude it would not be difficult to foresee the close call between the truck and the bus, forcing the bus far to the right. Obviously, then, the bus would have to move out and proceed once the truck had passed. The moment of injury was close in time and space to the placing of the cones. The existence of the dumpster and the elevated train pillar was obvious. We cannot say as a matter of law that scenario was "highly extraordinary" or "tragically bizarre" or "unique." See *Michalak v. County of La Salle* (1984), 121 Ill. App. 3d 574, 576, 459 N.E.2d 1131.

This would not be the passive negligence of the City in *Quintana v. City of Chicago* (1992), 230 Ill. App. 3d 1032, 596 N.E.2d 128, where the traffic lights were inoperative. Nor did the bus driver here violate safety statutes, as one or both of the drivers in *Quintana* did.

The bus driver's actions are not, as a matter of law, the kind of "new and independent force which breaks the causal connection between the original wrong and the injury itself becomes the direct and immediate cause of the injury." (*Durbin v. St. Louis Slag Products Co.* (1990), 206 Ill. App. 3d 340, 357, 564 N.E.2d 242.) Once it is said that the "causal connection" may be unbroken, a jury can consider that there may be more than one proximate cause of an injury. *Bentley v. Saunemin Township* (1980), 83 Ill. 2d 10, 17, 413 N.E.2d 1242, 1246.

The City has the duty to maintain its public highways in a reasonably safe condition. (*Parsons v. Carbondale Township* (1991), 217 Ill. App. 3d 637, 649, 577 N.E.2d 779.) It would not be placing too great a burden on the City to require its sign painters to conform to the Manual on Uniform Traffic Control Devices. The Manual tells the City that the function of the cone is "to guide and direct drivers and pedestrians safely past the hazards." United States Department of Transportation, Manual on Uniform Traffic Control Devices at 6C-1 (1988).

Whether the duty was violated in this case is a matter for a jury to determine. We find the grant of summary judgment on the proximate cause issue was in error.

## B. STATUTORY IMMUNITY

The City abandons section 2—201 of the Tort Immunity Act (745 ILCS 10/1—101 *et seq.* (West 1992)) as a basis for its claim of statutory immunity. Instead, the City contends section 3—104 bars the plaintiff's claims.

That section provides:

> "Neither a public entity nor a public employee is liable under this Act for an injury caused by the failure to initially provide regulatory traffic control devices, stop signs, yield right-of-way signs, speed restriction signs, distinctive roadway markings or any other traffic regulating or warning sign, device or marking, signs, overhead lights, traffic separating or restraining devices or barriers." 745 ILCS 10/3—104 (West 1992).

Section 3—104 represents the legislature's clear intent to "immunize *absolutely* the failure to initially provide a traffic control device even where such failure might 'endanger the safe movement of traffic.'" (Emphasis in original.) *West v. Kirkham* (1992), 147 Ill. 2d 1, 8, 588 N.E.2d 1104.

The City contends the supreme court's reading of section 3—104 provides blanket immunity from the allegations in this case. In *West,* the plaintiff was complaining of the city's failure to provide turn arrows, warning signs, and traffic control devices. Those alleged failures were held to be immunized. The fact that the city provided other turn signals at the intersection did not change the court's view. Providing some devices, said the court, did not remove the plaintiff's claim from the statute's proscription of an "initial" failure to provide traffic devices.

■ Some of plaintiff's allegations in this case are grounded in the City's initial failure to provide traffic cones between the two moving lanes on the west side of Halsted Street. In addition, the plaintiff

complains of the City's failure to place a flagman on the scene to warn motorists about the narrowed roadway. Those allegations, contained in paragraphs (b) and (e), and in the final part of (d) of plaintiff's complaint, run afoul of section 3—104. The trial judge properly granted summary judgment on those allegations.

The remainder of plaintiff's allegations concern the way in which the cones were placed. They mirror Dr. Michaels' opinion that the cones created too great an angle of taper for safe driving on the west side of Halsted Street. It is not the failure to do or provide something the plaintiff complains about; it is the way the cone-placing was done.

The City urges us to follow the fourth district decision in *Gapinske v. Town of Condit* (1993), 250 Ill. App. 3d 1045, 619 N.E.2d 1383. To do that, we would have to find, as the majority in *Gapinske* did, that a 1986 legislative change "in its entirety stripped the word 'initially' of any meaning," and that its continued presence in the statute is "simply a legislative oversight." (*Gapinske*, 250 Ill. App. 3d at 1049.) The *Gapinske* majority was persuaded by the elimination of former paragraph (b) of section 3—104. That paragraph extended immunity to a public entity for an injury caused by the failure to provide certain warning signals and signs. We do not see how the elimination of that paragraph vaporized the word "initially" in the first paragraph. The word was there before 1986 and it was there after 1986.

We find nothing in *West v. Kirkham* (1992), 147 Ill. 2d 1, 588 N.E.2d 1104, or in the legislative history of section 3—104 that would justify the excision made by the majority in *Gapinske*. Rather, we agree with the dissenting opinion in that case and with the fifth district in *Parsons v. Carbondale Township* (1991), 217 Ill. App. 3d 637, 577 N.E.2d 779. In *Parsons*, the court held that once the township elected to install a road sign, the immunity statute did not protect it from a failure to use reasonable care.

In *Quintana v. City of Chicago* (1992), 230 Ill. App. 3d 1032, 1035, 596 N.E.2d 128, a case relied on by the City, we said:

> "Installation of traffic control devices in a reasonably safe manner is part of a municipality's duty to maintain its public highways in a reasonably safe condition and failure of such devices installed by the municipality to comply with specifications stated in the State manual could result in a breach of that duty." 230 Ill. App. 3d at 1035, citing *Parsons v. Carbondale Township* (1991), 217 Ill. App. 3d 637, 577 N.E.2d 779.

We hold that a fair reading of section 3—104 gives meaning to the presence of the word "initially." If the legislature wanted to immunize public entities from all wrongful conduct in the placement of

signs and signals, it could have done so. It is not for us to take so severe a step toward eliminating a firmly established common law duty owed by public bodies to their citizens. (See *Baran v. City of Chicago Heights* (1969), 43 Ill. 2d 177, 181, 251 N.E.2d 227, 229.) Public officials should be free to exercise or not exercise their discretion without fear of having to answer in damages for a wrong decision. That is the clear purpose of the statutory immunity scheme established by the Tort Immunity Act. Once the decision is made, however, the public body has the duty to carry it out in a reasonably safe manner. *Wagner v. City of Chicago* (1993), 254 Ill. App. 3d 842, 626 N.E.2d 1227, *appeal granted* (1994), 155 Ill. 2d 577, 633 N.E.2d 16.

We find that section 3—104 does not bar those portions of the plaintiff's complaint that allege misconduct in the way the traffic-regulating cones were placed at Halsted and Lake Streets.

## CONCLUSION

For the reasons given, we affirm the grant of summary judgment on the allegations contained in paragraphs (b) and (e), and the final portion of paragraph (d) of plaintiff's complaint that refers to the placing of a flagman; we reverse the grant of summary judgment on the other allegations of plaintiff's complaint and remand for further proceedings.

Judgment affirmed in part; reversed and remanded in part.

CAMPBELL, P.J., and BUCKLEY, J., concur.