NO. 4-96-0168

                          IN THE APPELLATE COURT

                                OF ILLINOIS

                              FOURTH DISTRICT

DEANNA CORNING,                          )    Appeal from

          Plaintiff-Appellant,           )    Circuit Court of

          v.                             )    Coles County

EAST OAKLAND TOWNSHIP,                   )    No. 95L77

RANDY STRADER, and COLES COUNTY,         )

          Defendants-Appellees.          )    Honorable

                                         )    Paul C. Komada,

                                         )    Judge Presiding.

_________________________________________________________________

          PRESIDING JUSTICE COOK delivered the opinion of the

court:

          Plaintiff Deanna Corning was injured when she drove her

automobile through a rural "T" intersection and into a ditch. 

Plaintiff filed a complaint against defendants East Oakland

Township, Randy Strader (the township's road supervisor), and

Coles County, alleging that her injuries resulted from defen-

dants' failure to maintain the intersection in a reasonably safe

condition.  Specifically, plaintiff alleged that the intersection

had become unreasonably dangerous because a stop sign erected by

defendants had been removed by persons unknown and not replaced. 

Defendants moved to dismiss the complaint, contending that they

were shielded from liability under sections 2-201 and 3-104 of

the Local Governmental and Governmental Employees Tort Immunity

Act (Act) (745 ILCS 10/2-201, 3-104 (West 1994)).  The trial

court dismissed the complaint with prejudice.  We reverse and

remand.

          For purposes of review of the complaint's legal suffi-

ciency, we take all well-pleaded facts as true.  Straub v. City

of Mt. Olive, 240 Ill. App. 3d 967, 973, 607 N.E.2d 672, 676

(1993).  The accident occurred at approximately 1:47 a.m. on

August 4, 1994, at the intersection of county roads 2050 North

and 2400 East.  County Road 2050 North runs north-south for a

short distance, then curves to the west for northbound traffic

approximately 200 yards to the east of its intersection with 2400

East.  Defendants erected an arrow sign to indicate that the road

curves.  At the point of intersection, 2400 East runs north-south

and 2050 North runs east-west.  The roads come together as a "T,"

with 2050 North temporarily ending at the intersection.  A

drainage ditch runs parallel to 2400 East on the road's west

side.  At the time of the accident, the intersection was unlit

and obscured from motorists' view by tall corn growing in the

surrounding fields.

          Defendants had erected a stop sign at the intersection

for westbound travelers on 2050 North, but it had been removed by

persons unknown.  The sign post was left standing.  Plaintiff

does not know how long the sign was missing, but she alleges that

it was missing a sufficient period of time that defendants should

have discovered its absence during the normal course of road

maintenance.  Without a stop sign, the intersection became

dangerous because motorists were likely to drive straight

through.  Plaintiff, who was unfamiliar with the roads, drove

through the intersection and into the drainage ditch parallel to

2400 East.

          Plaintiff alleged, inter alia, that defendants breached

the following duties:  (1) they failed to exercise ordinary care

to maintain the intersection, (2) they failed to have a reason-

able inspection system of signs and traffic control devices, (3)

they failed to maintain the stop sign in a legible manner, (4)

they failed to discover that the sign was missing, (5) they

failed to replace the stop sign, (6) they failed to erect the

stop sign in such a manner to make its removal by vandals or acts

of nature unlikely, and (7) they failed to warn plaintiff of the

dangerous condition caused by the missing sign by posting barri-

cades or other traffic control devices.  The complaint contained

two counts against each defendant, one premised on negligence,

the other premised on wilful and wanton misconduct.

          The trial court found that the Act afforded defendants

immunity, and it dismissed the complaint.  It is unclear whether

the court believed the defendants immune under section 2-201,

section 3-104, or both.  745 ILCS 10/2-201, 3-104 (West 1994). 

We hold that section 2-201 is inapplicable, and section 3-104

provides defendant with only a partial shield.

          The Act governs the tort liability of local government

entities and their employees.  The Act confers no new duties;

rather, it delineates certain immunities.  West v. Kirkham, 147

Ill. 2d 1, 14, 588 N.E.2d 1104, 1110 (1992).  Not all common law

duties are abrogated by the Act.  Section 3-102 codifies the

common law duty of local public entities to maintain their

property in reasonably safe condition.  Swett v. Village of

Algonquin, 169 Ill. App. 3d 78, 92, 523 N.E.2d 594, 604 (1988). 

The common law duty to maintain did not extend to creating or

erecting public improvements.  West, 147 Ill. 2d at 14, 588

N.E.2d at 1110.  However, once having undertaken the construction

of public highways and traffic control devices, public entities

have a duty to install and maintain them with reasonable care. 

Ellison v. Village of Northbrook, 272 Ill. App. 3d 559, 563, 650

N.E.2d 1059, 1062 (1995).

          Plaintiff has adequately alleged that she was injured

as a proximate result of defendants' failure to maintain their

stop sign.  Defendants contend, however, that their failure to

maintain and replace the missing sign was a discretionary act,

and such exercises of discretion are afforded immunity under the

Act.

          Sections 2-109 and 2-201 of the Act provide:

               "A local public entity is not liable for

          an injury resulting from an act or omission of

          its employee where the employee is not liable."

          745 ILCS 10/2-109 (West 1994).

               "Except as otherwise provided by Statute,

          a public employee serving in a position in-

          volving the determination of policy or the

          exercise of discretion is not liable for an

          injury resulting from his act or omission in

          determining policy when acting in the exer-

          cise of such discretion even though abused."

          745 ILCS 10/2-201 (West 1994).

          The common law recognized a distinction between discre-

tionary duties, the negligent performance of which does not

subject a government entity to tort liability, and ministerial

duties, the negligent performance of which can subject a munici-

pality to tort liability.  Snyder v. Curran Township, 167 Ill. 2d

466, 473, 657 N.E.2d 988, 992 (1995).  Section 2-201 of the Act

has been interpreted to be a codification of this common law

distinction.  Snyder, 167 Ill. 2d at 473, 657 N.E.2d at 992. 

Discretionary acts are those which are unique to the particular

public office and involve the exercise of judgment, while minis-

terial acts are those performed in a prescribed manner, in

obedience to the mandate of legal authority, without regard to

the exercise of discretion as to the propriety of the acts being

done.  Kennell v. Clayton Township, 239 Ill. App. 3d 634, 639,

606 N.E.2d 812, 816 (1992).

          In Snyder, the supreme court held that the Illinois

Manual on Uniform Traffic Control Devices (92 Ill. Adm. Code

§546.100 et seq. (Supp. 1986)) mandated placement of a warning

sign in a certain location, and thus the defendant township was

without discretion to place the sign elsewhere.  Snyder, 167 Ill.

2d at 475, 657 N.E.2d at 993.  Defendants maintain that because

no regulations govern the maintenance and replacement of stop

signs, their failure to maintain and replace the missing sign was

an act of discretion.

          Defendants' argument contains a fatal flaw.  Here,

plaintiff has alleged that the intersection became unreasonably

dangerous when the sign was stolen without defendants' knowledge

or authority.  "Discretion" connotes a conscious decision. 

Defendants exercised discretion in deciding to erect a stop sign;

nothing indicates they decided to remove it.  Arguably, the

decision not to maintain or inspect their property was an act of

discretion, but this is "an impermissibly expansive definition of

discretionary immunity."  Snyder, 167 Ill. 2d at 472, 657 N.E.2d

at 992.  Every failure to maintain property could be described as

an exercise of discretion under defendants' expansive approach. 

We do not believe that the legislature intended such a result,

otherwise it would not have codified the common law duty to main-

tain property under section 3-102 of the Act.  745 ILCS 10/3-102

(West 1994).

          This does not mean that once a public entity erects a

sign it may never exercise its discretion to remove it.  In

Robinson v. Atchison, Topeka & Santa Fe Ry. Co., 257 Ill. App. 3d

772, 629 N.E.2d 209 (1994), the third district upheld summary

judgment in favor of the defendant township because it had

exercised its discretion in removing a sign.  The plaintiffs were

injured in a collision at a railroad crossing.  The evidence

established that the defendant had posted a warning sign 10 years

earlier but no sign was in place for at least three years prior

to the accident.  Under these facts, the court concluded that

plaintiff failed to establish that defendants were maintaining a

warning sign in proper repair.  The court wrote:

          "What the plaintiffs are essentially arguing

          is that, because the township once had a warning

          sign on 15th Road, it is now forever required

          to have one there.  As previously noted, the

          decision whether to place a railroad advance

          warning sign on a parallel road is discretion-

          ary.  Likewise, the decision to remove such a 

          sign would also be discretionary.  This is not

          a case in which a warning sign had fallen into

          a state of disrepair or had fallen over."

          Robinson, 257 Ill. App. 3d at 776, 629 N.E.2d

          at 212.

Robinson suggests that in a case where a sign has fallen into

disrepair, discretionary immunity would not apply.  That is

essentially what plaintiffs have alleged here:  the stop sign

fell into disrepair because of vandalism.  As we take the well-

pleaded facts as true, there is no basis to conclude that defen-

dants exercised their discretion in removing the stop sign.  This

does not mean that defendants cannot establish discretionary

immunity under any set of facts.  We simply hold that dismissal

on the pleadings pursuant to section 2-201 of the Act was improp-

er.

          Defendants next contend that because under section 3-

104 of the Act they had no duty to erect a stop sign, they cannot

be held liable for injuries resulting from a sign's absence. 

Plaintiff maintains that once defendants have undertaken to erect

a sign, they may be liable for inadequate maintenance of that

sign.

          Section 3-104 of the Act provides:

               "Neither a local public entity nor a pub-

          lic employee is liable under this Act for an 

          injury caused by the failure to initially pro-

          vide regulatory traffic control devices, stop 

          signs, yield right-of-way signs, speed restric-

          tion signs, distinctive roadway markings or 

          any other traffic regulating or warning sign,

          device or marking, signs, overhead lights,

          traffic separating or restraining devices or

          barriers."  (Emphasis added.)  745 ILCS 

          10/3-104 (West 1994).

          The crux of the dispute is what effect, if any, should

be given the word "initially" in section 3-104 of the Act.  745

ILCS 10/3-104 (West 1994).  In West, the plaintiff sued a munici-

pality after being injured in a collision at an intersection. 

The municipality had installed a left-turn traffic signal for

northbound traffic, but it had not installed such a signal for

southbound traffic.  The plaintiff alleged she was injured as a

result of the municipality's failure to provide a turn signal for

southbound traffic, and that the municipality was no longer

immune under section 3-104 of the Act once it had initially

undertaken to provide a signal for northbound traffic.  The

supreme court disagreed and held that the municipality was immune

under section 3-104 for its failure to install another traffic

signal.  The court reasoned, "[t]he creative plaintiff, seeking

to premise an action on the failure to provide a particular

traffic device, could always circumvent section 3-104 by finding

and pointing out some other traffic device that was provided." 

(Emphasis in original.)  West, 147 Ill. 2d at 10, 588 N.E.2d at

1108.

          Relying in part upon West, Presiding Justice Steigmann

concluded that a proper construction of section 3-104 of the Act

requires that the word "initially" simply be read out of the

statute.  Gapinske v. Town of Condit, 250 Ill. App. 3d 1045,

1049, 619 N.E.2d 1383, 1386 (1993).  Under the broad reading of

section 3-104 announced in Gapinske, a sign's absence could never

form the basis of liability for a public entity, regardless of

whether that public entity had ever undertaken to provide a sign. 

Justice Lund dissented, arguing that once a government body

decided to provide a sign, it had a duty to install and maintain

it in a reasonably safe condition.  Gapinske, 250 Ill. App. 3d at

1051-53, 619 N.E.2d 1387-89 (Lund, J., dissenting).  See also

Gapinske, 250 Ill. App. 3d at 1050-51, 619 N.E.2d at 1387 (Cook,

J., specially concurring) ("The word [initially] may be used to

distinguish between the failure to initially provide a sign, for

which there is immunity, and the failure to replace a damaged or

stolen sign, for which there may be liability under the town's

duty to maintain its property").

          We conclude the broad reading of section 3-104 an-

nounced in Gapinske is no longer viable because the supreme court

has indicated in Snyder that the word "initially" is to be given

effect.  The court wrote:

          "[T]he crux of defendant's oral argument was 

          that it is illogical for the Immunity Act to 

          absolutely immunize a public entity's initial 

          failure to erect a traffic warning device (see 

          745 ILCS 10/3-104 (West 1992); West[, (147 

          Ill. 2d 1, 588 N.E.2d 1104)]), but fail to

          extend this absolute immunity once the traffic

          warning device is erected.  What defendant 

          and the appellate court failed to recognize, 

          however, is that it is not for the courts to 

          extend this statutory immunity or to fill the 

          perceived interstices of the Immunity Act:  

          that is strictly the province of the General 

          Assembly."  Snyder, 167 Ill. 2d at 477, 657 

          N.E.2d at 994.

See also Jefferson v. City of Chicago, 269 Ill. App. 3d 672, 678,

646 N.E.2d 1305, 1310 (1995) (holding that nothing in the West

decision justifies Gapinske's excision of the word "initially"

from section 3-104).

          Defendants cite Culver v. Velcor, 247 Ill. App. 3d 589,

616 N.E.2d 1013 (1993), for the proposition that section 3-104 of

the Act immunizes a public entity's decision not to maintain and

replace a sign that it had erected.  Properly understood, Culver

stands for the opposite proposition.  In Culver, the State of

Illinois erected and maintained a stop sign at an intersection. 

The sign was knocked down or removed.  As a result, plaintiff

drove through the intersection and collided with another vehicle. 

Plaintiff sued the county, alleging that the county failed to

erect another sign or warning devices.  The second district held

that the county was immune under section 3-104 because it never

initially erected the sign.  That decision was made by the State. 

The Culver decision suggests that had the county initially

provided the sign, it could be liable for its failure to maintain

it.  Culver, 247 Ill. App. 3d at 596, 676 N.E.2d at 1017-18.

          Here, defendants initially provided a stop sign.  Had

they not done so, they could not be held liable for not posting a

sign at a dangerous intersection.  Once the decision to post a

sign was made, they had a duty to maintain the sign with reason-

able care.  Under West, however, they had no duty to erect addi-

tional warning devices simply because they erected the stop sign. 

The trial court properly struck those counts of the complaint

which allege defendants failed to warn plaintiff of the missing

sign by posting barricades or other traffic control devices, but

those counts premised on a failure to maintain the stop sign

should not have been dismissed.

          Reversed and remanded for further proceedings in

accordance with this opinion.

          STEIGMANN and KNECHT, JJ., concur.